IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEVELOPERS SURETY AND
INDEMNITY COMPANY

    v.

KYRIAKOS KIOTSEKOGLOU,
et al.

    :
    :
    :  Civil Action No. DKC 20-0223
    :
    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case is a motion by Plaintiff Developers Surety and Indemnity Company ("Developers") for entry of default judgment against Defendant J&K Contracting, Inc. ("J&K"). (ECF No. 26). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

**I. Background**

Developers is a California corporation engaged in the business of surety bonding, primarily in the construction field. J&K is a Maryland corporation, owned by Kyriakos and Argiro Kiotsekoglou ("the Kiotsekoglous"). J&K contracted with the County School Board of Prince William County ("the School Board") to replace the metal roof walkway at four elementary schools in Prince William County, Virginia ("the Project"). (ECF No. 26-1, at 3-4). In accordance with industry practice, J&K "requested .

. . Developers [to] issue surety bonds for" the Project.  "In order
to induce Developers to issue those surety bonds," J&K and the
Kiotsekoglous, signing as individuals, executed an indemnity
agreement ("the Agreement") with Developers on January 30, 2018,
naming Developers as surety and J&K as the principal indemnitor.
(ECF No. 1, ¶¶ 8-9).  Pursuant to the Agreement, J&K agreed to
"fully and continuously indemnify [Developers] against any and all
Loss or expenses of every kind of nature[.]"  (ECF No. 1-1, ¶ 2).
Pertinently, "Loss" was defined to include:

> Liability incurred or amounts paid in
> satisfaction or settlement of any or all
> claims, demands, damages, costs, lawsuits
> . . . relating to [J&K's] actual or alleged
> nonperformance of any obligation covered by a
> Bond.

> Liability incurred or expenses paid in
> connection with actual or potential claims,
> lawsuits . . . relating to a Bond, including,
> without limitation, attorneys' fees, all legal
> expenses, and all fees and costs for
> consultant . . . . [and]

> Liability incurred or expenses paid in
> recovering or attempting to recover Loss or
> other expenses paid or incurred in connection
> with this Agreement, or a Bond.

(ECF No. 1-1, at 1).

On March 22, 2018, in reliance on the Agreement, Developers
issued both a performance and payment bond, securing J&K's
obligation to the School Board for the Project.  The performance
bond, in the penal sum of $370,000.00, guaranteed J&K's completion

of the Project.   The payment bond, also in the penal sum of $370,000.00, guaranteed payment of all labor, material, supplies, and equipment used in completion of the Project.  Both bonds named J&K as principal and the School Board as "OWNER" of the bonds, to whom "The Contractor and Surety, jointly and severely, bind themselves" under the "Construction Contract [between J&K and the School Board]."  (*See* ECF No. 1-2, at 1, § 1 and at 4, § 1). Although the precise manner is left unclear, Developer alleges that J&K defaulted on its bonded obligations by "(1) failing to complete the work secured by the Bonds; (2) failing to procure the release of the Bonds; and (3) failing to pay for all labor, materials, supplies, and equipment used in the completion of the Project secured by the Bonds."  (ECF No. 1, ¶ 17).

In November 2018, the School Board declared J&K in default for failing to complete the Project and demanded $236,458.28 against Developers' performance bond.   In response, Developers retained J.S. Held, LLC ("J.S.") to investigate the validity of the School Board's assertions.   Upon receiving confirmation of J&K's default, Developers negotiated a settlement with the School Board in the amount of $40,000.00 on May 21, 2019.   Developers also paid $3,531.00 to J.S. for its investigative services.

In addition to the School Board's demand against the performance bond, two demands were also made against the payment bond.  The first was made in October 2018, by Design Components,

3

Inc., J&K's material supplier, for unpaid costs of materials supplied to J&K in the amount of $129,260.00.[1]  Upon completing its investigation, Developers paid Design Components, Inc. $129,260.00 on November 27, 2018.  (ECF No. 26-1, at 8).

The second demand against Developers' payment bond was made in February 2019 by Eliano Pacheco ("Mr. Pacheco"), J&K's subcontractor, in the amount of $100,422.00 for unpaid labor supplied to J&K for the Project.  Developers was promptly served with a complaint filed by Mr. Pacheco in the Circuit Court for Prince William County, Virginia, seeking $100,422.00 against Developers' payment bond.  (ECF No. 1, ¶ 23).  During the Pacheco litigation, Developers sent a demand letter to J&K on July 16, 2019, demanding $319,260.00 in collateral, including $169,260.00 for costs Developers had already expended on J&K's behalf and for $150,000.00 to cover the ongoing Pacheco suit against Developers. (ECF No. 1-3).  J&K, however, still failed to indemnify Developers for these loses once they were fully realized.

Developers contends that it incurred the following costs arising from the Pacheco suit: (1) attorneys' fees of $58,949.50;

---

[1] Developers misstated the date as 2019 in various places.

(2) litigation costs of $1,024.34;[2] and, (3) a settlement payment to Mr. Pacheco for $82,500.00.  (ECF No. 26-1, at 9).

On January 24, 2020, Developers filed its complaint against J&K and the Kiotsekoglous.[3]  (ECF No. 1).  The complaint alleges three Counts: I) Breach of Contract, and two equitable claims, II) Quia Timet, and III) Specific Performance, all arising out of the Agreement.  Plaintiff seeks an amount "expected to be in excess of $203,454.50" under the breach claim and the creation of a reserve fund of $319,260.00 to satisfy the two equitable claims.[4]  The clerk entered J&K's default on May 29, (ECF No. 19), and issued notice of default.  (ECF No. 20).  On September 9, 2020, Developers

---

[2] Such expenses include filing fees, service of foreign subpoenas fees, Spanish interpreter services, and court reporter services for party litigation.  (ECF No. 26-2).

[3] On July 22, 2020, the claims against the Kiotsekoglous were administratively closed because they initiated bankruptcy proceedings, resulting in an automatic stay.  (ECF No. 24).

[4] The motion for default judgment re-highlights these amounts (ECF No. 26-1, at 1 n.1), and requests a declaration that Developers "is entitled to attorneys' fees and costs incurred to collect the judgment" and cites to ¶ 13 of the complaint that highlights the portion of the Agreement in which Developers and J&K agreed to the right of Developers to demand and maintain the reserve fund.  (*Id.*, at 15 n.4) (citing ECF No. 1, ¶ 13).  While the breach of contract claim cites to a lesser amount than is ultimately sought for default judgment as a whole, it makes clear that this amount was not fixed or fully realized at the time of filing (including, among other things, the increasing litigation costs of the then-ongoing Pacheco dispute), and puts Defendants on notice of all the various sources of costs (including those in incurred in investigating the claims against the bonds) that make up the eventual damages sought in this motion.

filed the presently pending motion for default judgment. (ECF No. 26).  J&K has not responded.

Developers requests the following: (1) combined losses incurred on the performance and payment bonds; (2) litigation expenses for the instant case; (3) prejudgment interest; (4) post-judgment interest; and, (5) any collection costs that Developers may incur in enforcing the court's judgment. (ECF No. 26, at 2).

## II.  Standard of Review

An entry of default is within the discretion of the trial court and default judgment is appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002*); SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).  Fed.R.Civ.P. 55(a), which governs default judgments, states "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  If a party fails to plead or defend, then the Clerk may enter a default judgment "[i]f the plaintiff's claim is for a sum certain or a sum certain that can be made certain by computation . . . ." Fed.R.Civ.P. 55(b)(1); *see Monge v. Portofino Ristorante*, 751 F.Supp.2d 789 (D.Md. 2010).  In all other cases, the party must apply to the court for a default judgment. Fed.R.Civ.P. 55(b)(2).

Judge Hazel succinctly delineated the following standard for entry of default judgment:

> In determining whether to award a default judgment, the court takes as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)); *see* Fed.R.Civ.P. 8(b)(6) ("An allegation-other than one relating to the amount of damages-is admitted if a responsive pleading is required and the allegation is not denied."). It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010); *see also* FED. PRAC. & PROC. [section] 2688 (3d ed. 1998) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

*Hanover Ins. Co. v. Persaud Cos., Inc.*, No. GJH-13-472, 2015 WL 4496448 at *2 (D.Md. July 22, 2015) (citing Fed.R.Civ.P. 55(b)(1)). "A plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence." *United States v. Vardoulakis*, No. WDQ-07-3341, 2010 WL 5137653 at *3 (D.Md. Nov. 9, 2010) (citing *Medunic v. Lederer*, 64 F.R.D. 403, 405 n.7 (E.D.Pa. 1974) *rev'd on other*

*grounds*, 533 F.2d 891 (3ᵈ Cir. 1976) (entering default judgment for the government after it provided an unrebutted declaration and certified form showing that the defendant had incurred tax liability).

Fed.R.Civ.P. 54(c) limits the type of judgment that may be entered upon a party's default. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D.Md. 2012) (quoting Fed.R.Civ.P. 54(c)). Where a complaint specifies the amount of damages sought, the plaintiff is generally limited to entry of a default judgment in that amount. *See In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4ᵗʰ Cir. 2000). According to the United States Court of Appeals for the Fourth Circuit, where "a complaint demands a specific amount of damages, courts have *generally* held that a default judgment cannot award additional damages. The rationale is that a default judgment cannot be greater than the specific amount sought because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys*, 204 F.3d at 132 (emphasis added). Here, Developers recited a minimum amount that had been incurred, but indicated that costs were continuing. It also sought a reserve fund $150,000 above the costs and expenses already incurred. The precise sums sought in the pending motion do not exceed the reserve fund amount sought.

## III. Discussion

The issues now pending are: (1) whether Developers has established J&K's liability for a breach of contract, and, if such breach has been established, (2) the proper award of damages. Entering judgment on the breach of contract claim and awarding damages based on the full universe of losses that Developers properly identifies as caused by this breach renders the two equitable claims also arising out of the Agreement moot.

In Maryland, succeeding on a breach of contract claim requires a plaintiff to show that: (1) the defendant owed the plaintiff a contractual obligation, which, (2) the defendant materially breached. *Concentric Methods, LLC v. Cillian Techs., LLC*, No. 11-cv-1130-DKC, 2011 WL 6180143, at *2 (D.Md. Dec. 12, 2011). "A surety bond is a three-party agreement between a principal obligor, an obligee, and a surety. In a performance bond context, the surety assures the obligee that if the principal fails to perform its contractual duties, the surety will discharge the duties." *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 299 (2004). Similarly, "[i]n a payment bond, the surety guarantees the principal's duty to the obligee to pay [the principal's] laborers, subcontractors, and suppliers." *Id.* at 299. Here, J&K has breached and is, therefore, liable to Developers because J&K "fail[ed] to indemnify the surety after the surety incurred a loss

9

on a bond." *See Westfield Ins. Co. v. Site Maint., Inc.*, No. 12-cv-3145-PWG, 2013 WL 5964505, at *3 (D.Md. Nov. 6, 2013).

J&K owed a legal duty to Developers as shown by the Agreement executed between itself and J&K. The facts alleged in the complaint establish that three demands for payment were advanced against Developers in connection with J&K's default, that Developers had to perform its obligations to investigate the demands against the bonds, and pay various amounts, and that it incurred expenses in that process. Despite Developers' demand for reimbursement from J&K, Developers has not been paid for those losses. Thus, the well pled allegations in the complaint demonstrate J&K's liability to Developers.

Developers has not asserted any claims for liquidated damages. *See Barrie School v. Patch*, 401 Md. 497, 507-08 (2007) ("Liquidated damages have been defined as a specific sum stipulated to and agreed upon by the parties at the time they entered into a contract, to be paid to compensate for injuries in the event of a breach of that contract."). Therefore, computation of sum certain for entry of default judgment requires support "by affidavit or documentary evidence." *Vardoulakis*, 2010 WL 5137653, at *3.

While the allegations in a complaint as to damages are not deemed admitted, Developers has adequately substantiated the following amounts claimed: (1) $315,264.84 for combined losses

10

under both bonds; (2) $15,836.50 for attorneys' fees in the instant case; and, (3) $582 for additional costs in the instant case.

### A.   Losses Incurred from Issuance of Bonds

Developers has shown the $315,264.84 to be sum certain, consisting of the following: (1) $40,000.00 payment to the School Board fully to settle the demand against the performance bond; (2) $3,531.00 paid to J.S. for investigative services; (3) $129,260.00 payment to Design Components, Inc. under the payment bond; and, (4) litigation expenses in the amount of $142,473.84 arising from the Pacheco suit, also under the payment bond. (*See* ECF No. 26-1, at 7-9).

#### 1.   The School Board

Developers offers Ms. Schildbach's affidavit to support the $40,000.00 payment made to the School Board. (*See generally* ECF No. 26-1). Ms. Schildbach attests that Developers paid the School Board to satisfy J&K's bonded obligation. (ECF No. 26-2, ¶ 13). Enclosed with her affidavit is a copy of the check issued to the School Board for $40,000.00 on May 22, 2019. (*See* ECF No. 26-2, at 10).

#### 2.   Design Components, Inc.

Next, to substantiate Developers' request of recovering the $129,260.00 payment against the payment bond, Ms. Schildbach states that Developers paid Design Components, Inc. $129,260.00 "in full and final resolution" of J&K's obligation. (ECF No. 26-

11

2, ¶ 18).  Ms. Schildbach also encloses a copy of the check issued in the same amount on November 30, 2018.  (*Id.* at 15).

### 3.  Pacheco Litigation

The $142,473.84 in litigation expenses arising under the Pacheco suit can further be itemized as follows: (1) $58,949.50 in attorneys' fees; (2) additional litigation costs in the amount of $1,024.34; and, (3) $82,500.00 settlement payment to Mr. Pacheco. (ECF No. 26-1, at 8-9).

### a.  Attorneys' Fees

J&K has an enforceable obligation to reimburse Developers' attorneys' fees.  "A contractual obligation to pay attorneys' fees generally is valid and enforceable in Maryland." *Atl. Contracting*, 380 Md. at 316 (citing *Qualified Builders, Inc. v. Equitable Tr. Co.*, 273 Md. 579, 584 (1975)).  "Where an award of attorneys' fees is called for by the contract in question, the trial court will examine the fee request for reasonableness, even in the absence of a contractual term specifying that the fees be reasonable." *Id.* (quoting *Rauch v. McCall*, 134 Md.App. 624, 638 (2000)).  "An hourly rate is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey v. Scotts Co. LLC*, 30 F.Supp.3d 404, 412 (D.Md. 2014) (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)).  Appendix B to the Local Rules provides Guidelines Regarding Hourly Rates that provide presumptively

reasonable rates for attorneys.[5]  *See, e.g.*, *Duprey*, 30 F.Supp.3d at 412 (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D.Md. 2000)).

In support of the requested attorneys' fees, Developers offers counsel Shoshana E. Rothman's affidavit. (ECF No. 26-3). Ms. Rothman states that her firm expended 234.8 hours from March 2019 to March 2020 for Developers, defending against the Pacheco suit with the total fees amounting to $58,949.50. (ECF No. 26-3, ¶ 13). Ms. Rothman also provides the hourly rate for each attorney and paralegal, asserting that the rates are within the prescribed guidelines delineated in the Local Rules.[6] (ECF No. 26-3, ¶ 12). The invoices, enclosed by Ms. Schildbach, are largely consistent with Ms. Rothman's affidavit, showing that five attorneys and two

---

[5] The Local Rules provide non-binding guidelines regarding reasonable hourly rates that vary depending on how long an attorney has been admitted to the bar.  The Local Rules put forth the following guidelines: $150-225 for lawyers admitted to the bar less than five years; $165-300 for lawyers admitted for five to eight years; $225-350 for lawyers admitted for nine to fourteen years; $275-425 for lawyers admitted for fifteen to nineteen years; and $300-475 for lawyers admitted for twenty years or more.  The rate for paralegals and law clerks is $95-150.

[6] In her affidavit, Ms. Rothman, with 14 years of experience, states her hourly rate varied between $265.00 and $285.00.  With respect to the other four attorneys, Ms. Rothman attests that: (1) Ms. West, with nine years of experience, had an hourly rate of $250.00; (2) Ms. Carpenter, with seven years of experience, had an hourly rate of $250.00; (3) Ms. Andican, with five years of experience, had an hourly rate of $250.00; and, (4) Ms. Briglia, with over 30 years of experience, had an hourly rate of $285.00. (ECF No. 26-3, ¶¶ 6-10).

13

paralegals provided their services to Developers in defending against the Pacheco suit. (*See id*. at 21-61). Although the invoices show minor inconsistencies with Ms. Rothman's assertions as to hourly rates, the invoices also appear to justify a higher amount than the amount Developers requests.

### b.   Negotiated Settlement

With respect to the settlement payment made to Mr. Pacheco, Ms. Schildbach attests that Developers paid $82,500.00 to Mr. Pacheco and encloses a copy of the check issued to Mr. Pacheco in the same amount on February 27, 2020. (ECF No. 26-2, at 85-86).

### c.   Additional Litigation Costs

Developers also requests additional litigation costs in the amount of $1,024.34. (ECF No. 26-1, at 9). In their affidavits, both Ms. Schildbach and Ms. Rothman confirm that Developers incurred these costs as a result of the Pacheco suit. (ECF Nos. 26-2, ¶ 23; 26-3, ¶ 14). Ms. Schildbach also encloses invoices, which indicate that a total of $1,024.34 was in fact billed to Developers by its counsel for the following costs arising from the Pacheco suit: (1) court filing fees; (2) court reporter fees; (3) mileage costs; (4) service fees for two foreign subpoena; (4) service of process fees; (5) courier fees; and, (6) Spanish interpreting fees. (ECF No. 26-2, at 21-72).

14

**B.   Litigation Expenses in the Instant Case**

Developers has also established $15,836.50 in attorneys' fees and $582.00 in additional litigation costs arising under the instant case to be sum certain.

**1.   Attorneys' Fees in Instant Litigation**

Ms. Rothman attests that her firm billed Developers attorneys' fees in the amount of $15,836.50 to represent it in the instant litigation.[7]  (ECF No. 26-3, ¶ 15).  Ms. Rothman describes herself as the lead attorney, receiving primary assistance from two associate attorneys, and further providing that each attorney's hourly rate is within the guidelines delineated in the Local Rules.  (*Id.*, ¶¶ 3 and 12).  Upon review of the supporting invoices, the requested hourly rates are indeed within the prescribed guidelines for reasonableness.[8]  (*Id.*, at 7-19).  As with the Pacheco litigation, however, the invoices for attorneys' fees for the instant litigation do appear to support a higher amount than Developers' requested amount.

---

[7] Although Ms. Rothman states that her firm expended 61.9 hours, the invoices attached to Ms. Rothman's affidavit instead yield a total of 61.1 hours.  (*See* ECF No. 26-3, at 7-19).

[8] For the instant litigation: (1) Ms. Rothman had an hourly rate of $285.00; (2) Ms. West at $250.00 per hour; and, (3) Ms. Carpenter had an hourly rate of $250.00.  (*See* ECF No. 26-3, ¶¶ 6, 8, and 10).

### 2.   Additional Litigation Costs

To support Developers' recovery of the additional litigation costs, Ms. Rothman attests that "Developers has incurred costs of $582.00 in court filing fees and service of process fees for this instant litigation." (ECF No. 26-3, ¶ 16).   The record also contains two invoices issued by Developers' counsel, billing Developers for such fees for a total of $582.00. (ECF No. 26-3, at 11-16).

### C.   Prejudgment Interest

Developers additionally requests prejudgment interest on the losses sustained from issuance of both bonds in the "legal rate of six percent" dating from November 30, 2018. (ECF No. 26, at 2). "State law 'governs the award of prejudgment interest in a diversity case.'" *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 311 (4th Cir. 2020) (quoting *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999)).   Under Maryland law, prejudgment interest is a matter of right where "the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment[.]" *Buxton v. Buxton*, 363 Md. 634, 656-57 (2001) (quoting *First Va. Bank v. Settles*, 322 Md. 555, 564 (1991)).   Included within this category are "contracts providing for the payment of interest[.]"   Prejudgment interest for the remainder of contract cases, however, is a matter within the factfinder's discretion.   *Id.*

16

Where prejudgment interest is a matter of right, "interest accrues from the date where 'the obligation to pay and the amount due were both certain.'" *Parkway 1046,* 961 F.3d at 312 (quoting *Settles*, 322 Md. at 562).  The legal rate of prejudgment interest under Maryland law is six percent per annum.  Md. Const. Art. III § 57.

As explained below, Developers is entitled to prejudgment interest at the legal rate of six percent per annum accruing from dates when its losses were realized: (1) November 30, 2018 for the $129,260.00 payment to Design Components, Inc.; (2) May 21, 2019 for the $40,000.00 payment to the School Board; (3) February 27, 2020 for the $82,500.00 payment to Mr. Pacheco; and, (4) June 2, 2020 for $55,199.34 in defense costs arising under the Pacheco suit.

Developers is entitled to prejudgment interest on the three settlement payments – that is to the School Board, Design Components, Inc., and Mr. Pacheco – as a matter of right.  Per the Agreement, J&K was obligated to pay "interest from the date [Developers] pays any Loss[.]"  (ECF No. 1-1, at 1).  Although Developers requests prejudgment interest on all three settlement payments "from November 30, 2018[,]" (ECF No. 26, at 2), the court can discern only the $129,260.00 payment to Design Components, Inc. for which "the obligation to pay and the amount due were both certain" on November 30, 2018.  *See Parkway 1046,* 961 F.3d at 312

17

(quoting *First Va. Bank*, 322 Md. at 562).  As previously discussed, the copies of checks enclosed with Ms. Schildbach's affidavit show that Design Components, Inc. was paid on November 30, 2018, the School Board on May 22, 2019, and Mr. Pacheco on February 27, 2020. (ECF No. 26-2, at 10, 16, and 86).

Developers is also entitled to prejudgment interest on defense costs arising under the Pacheco litigation as a matter of right under the Agreement.[9]  As previously established, these defense costs consist of $58,949.50 in attorneys' fees and $1,024.34 in other litigation costs, yielding a total of $59,973.84.  Despite prejudgment interest being warranted here as a matter of right, Developers failed adequately to establish that it was deprived of the use of its funds by paying these costs.  A review of the record, however, indicates that of the requested $59,973.84, Developers has issued checks for a total of $55,199.34

---

[9]  There is some suggestion in Maryland caselaw that prejudgment interest on defense costs may be a matter within the factfinder's *discretion*.  The Court of Appeals of Maryland recently reasoned that defense costs resulting from ongoing litigation might not be "ascertainable at the time of breach and therefore not liquidated on a date prior to trial" to justify a by-right award.  *Nationwide Prop. & Cas. Ins. Co. v. Selective Way Ins. Co.*, 473 Md. 178, 248 A.3d 1044, 1053 (2021).  *Nationwide*, however, was decided in reviewing a judge's grant of interest on defense costs above and beyond a jury award.  In this context this distinction is not worth parsing out, as the result would be the same under either standard.  *See Beulah Baptist Church of Deanwood Heights v. Guideone Mutual Ins. Co.*, No. 17-cv-342-PJM, 2020 WL 7352540, at *4 (D.Md. Dec. 15, 2020) (finding that prejudgment interest was appropriate "whether as a matter of right or a matter of factfinder's discretion[.]").

throughout 2019 and 2020. (*See* ECF No. 26-2, at 62-72). The court will, therefore, use the date shown on the last check, corresponding to June 2, 2020, as the date when Developers realized its loss of $55,199.34, and hence, the accrual date for prejudgment interest.

### D.   Post-Judgment Interest

With respect to post-judgment interest, "[f]ederal law . . . governs the calculation of post-judgment interest in diversity cases." *Hitachi Credit*, 166 F.3d at 633. 28 U.S.C. § 1961(a) provides, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . Such interest shall be calculated from the date of the entry of the judgment". 28 U.S.C. § 1961(a).

> Federal law entitles prevailing litigants to a post-judgment interest award 'calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.'

*Skanska USA Building, Inc. v. J.D. Long Masonry, Inc.*, No. 16-cv-933-SAG, 2019 WL 4260277, at *11 (D.Md. Sept. 09, 2019) (quoting 28 U.S.C. § 1961(a) (2012)). Accordingly, an award of post-judgment interest need not be granted specifically, because a plaintiff is entitled to recover such interest by operation of law. *See Concentric Methods*, 2011 WL 6180143, at *2; *see also*

*United Cmty. Bank, Inc. v. IAAAA, Inc.*, No. 20-cv-594-GJH, 2021 WL 2685362, at *7 (D.Md. June 29, 2021).

   **E.   Post-Judgment Collection Costs**

   Finally, Developers seeks any post-judgment collection costs it may incur to enforce the court's judgment.  In *SunTrust Bank v. Goldman*, 201 Md.App. 390 (2011), the Court of Special Appeals of Maryland explained that "costs of collection are not recoverable absent a statute or public policy providing for such recovery." *Id.* at 406-07.  Developers has neither pointed to a statute nor offered any public policy reason to support its request for recovery of post-judgment collection costs.  Accordingly, Developers' request for collection costs will be denied.

**IV.  Conclusion**

   For the foregoing reasons, Plaintiff's motion for entry of default judgment will be granted.  A separate order will follow.


                                        /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge